Benjamin MOORE

v.

**PENSION BENEFIT GUARANTY COR-
PORATION, Audrey Y. Wyatt, Richard
R. Wohlschlaeger, Elizabeth L. Meier,
Miles E. Brewster, Jr.**

Civ. A. No. 82–5770.

United States District Court,
E.D. Pennsylvania.

May 31, 1983.

Benjamin Moore, pro se.

Linda E. Rosenzweig, Washington, D.C.,
for the government.

MEMORANDUM OPINION AND ORDER

WEINER, District Judge.

This is a pro se action under Title IV of
the Employment Retirement Income Secur-
ity Act of 1974 (ERISA), 29 U.S.C.
§§ 1301–1461 (Supp.1982), to compel the
defendant, The Pension Benefit Guaranty
Corporation (PBGC) to pay pension benefits
to the plaintiff. Jurisdiction is predicated
upon 29 U.S.C. § 1303(f). Plaintiff com-
plains essentially that the PBGC's determi-
nation that he is entitled to a deferred
vested monthly benefit of $287.15, rather
than an immediate monthly pension of
$531.55 is in error. Because the undisputed
facts in the record compel the conclusion
that the PBGC's determination is correct as
a matter of law, this court is constrained to
grant defendant's motion for summary
judgment.

The plaintiff presents a sympathetic case.
He began working for Allan Wood Steel
Company ("Allan Wood") on June 2, 1948.
He continued faithfully to serve as an em-
ployee of Allan Wood, except for his brief
tour of duty with the United States Army
in Korea, until November, 1977 when he,
along with substantially all of the compa-
ny's employees, was laid off because of the
termination of steelmaking operations at
the Allan Wood plant. As an hourly em-
ployee, plaintiff was covered by the pension
agreement executed between Allan Wood
and the United Steelworkers of America, of
which plaintiff was a member. In June of
1977, the company filed for reorganization
under Chapter 11 of the Bankruptcy Code
and moved for rejection and termination of
Debtors Pension Plan. By Order of Sep-
tember 28, 1978, the Bankruptcy Court au-
thorized the receivers to terminate the Pen-
sion Plan as of the date on which a com-
plete shutdown of Allan Wood's steelmak-
ing operations occurred and substantially
all of the Pension Plan participants were
laid off.

Pending the decision of the Bankruptcy
Court, the company filed a notice to termi-
nate the Pension Plan with the PBGC on
May 28, 1978 pursuant to § 4041(a) of ERI-
SA. 29 U.S.C. § 1341(a). The notice pro-

posed as the date of plan termination June 5, 1978, or alternatively, June 10, 1977, in the event that the Bankruptcy Court was to grant the receiver's motion to reject and terminate the Pension Plan. While treating the notice as valid, the PBGC determined that the assets of the plan were insufficient to cover all vested benefits, and terminated the plan pursuant to an agreement with the company under § 4042(c) of ERISA. 29 U.S.C. § 1342(c). The agreement executed January 5, 1979 appointed the PBGC as trustee, and established November 1, 1977 as the date of Plan Termination.

The problem, as plaintiff sees it, is that in June, 1978 he requested and began receiving benefits of $531.55 per month under the 30 years' service provision of the plan. This is because, plaintiff argues, he was laid off from his employment and could have been called back to work at one of Allan Wood's other plants which would, of course, make him eligible for the 30 years benefit provision under Section 2.3 of the plan. Only after the effective date of the § 1342(c) agreement did the defendant inform plaintiff that his benefit entitlement would be redetermined under the PBGC trusteeship. Because the plaintiff was seven months short of thirty years continuous service on the date of plan termination, it was determined that he was eligible only for deferred benefits under Section 2.7 of the Allan Wood Pension Plan ("the Plan"). Accordingly, he was informed that his pension benefit would cease as of January 1, 1980, but resume at a reduced level in November, 1989, when the plaintiff attains the age of sixty. Payments were continued at the initial rate until plaintiff's appeals were exhausted.

The primary obstacle the plaintiff cannot hurdle is the date of plan termination, November 1, 1977, as established in the agreement between the PBGC and Allan Wood. This is the critical date for determining whether a participant has satisfied the Plan's conditions for entitlement to benefits. Under Section 4022(a) of ERISA, 29 U.S.C. § 1322(a), the PBGC guarantees only those benefits which are nonforfeitable un-

der the terms of the Plan. That section provides:

> Subject to the limitations contained in subsection (b) [5 year phase-in limitations], the corporation [PBGC] shall guarantee ... the payment of all nonforfeitable benefits (other than benefits becoming nonforfeitable solely on account of the termination of a plan) under the terms of a plan ... which terminates at a time when section 4021 applies to it.

The attendant administrative regulations define a nonforfeitable benefit as follows:

> [A] benefit payable with respect to a participant is considered to be nonforfeitable, if *on the date of termination of the plan* the participant (or beneficiary) has *satisfied all of the conditions required of him under the provisions of the plan* to establish entitlement to the benefit, except the submission of a formal application, retirement, [or] completion of a required waiting period....

29 C.F.R. § 2613.6(a) (1982) (emphasis added). In *Nachman Corp. v. Pension Benefit Guaranty Corp.*, 446 U.S. 359, 373–74, 100 S.Ct. 1723, 1732, 64 L.Ed.2d 354 (1980) the court construed the definitional section of Title I of ERISA in a manner consistent with the forerunner of this regulation, and implicitly found the PBGC definition consonant with Congressional intent in enacting ERISA.

Because the plaintiff was only forty-eight years of age when the Plan terminated in November, 1977, the sole immediate retirement benefit for which he might have been eligible was the thirty-year benefit in Section 2.3 of the Plan. But, as outlined above, plaintiff falls seven months short of the thirty year requirement based on the agreed upon termination date of November 1, 1977. Thus, only if this court has the authority to revise the termination date for equitable consideration is the plaintiff eligible for immediate benefits. Although the court would be inclined to modify the date, it appears that we are without authority to do so under the law.

**536**

Recently, the Court of Appeals for the Third Circuit outlined the procedural ramifications of ERISA in *In re Syntex Fabrics, Inc. Pension Plan,* 698 F.2d 199 (3d Cir. 1982). In circumstances similar to the case *sub judice,* notice of termination was given to the PBGC pursuant to 29 U.S.C. § 1341 and the PBGC initiated proceedings under § 1342 because the fund was insufficient. Discussing the statutory avenues for determining the date of plan termination, the court noted that despite the involuntary nature of § 1342, the PBGC and the plan administrator can still agree to terminate the plan and appoint a trustee without resort to the court under 29 U.S.C. § 1342(c). This was the precise route followed in this case. Nonetheless, the court emphasized that "[I]f this is done, the termination date is that date established by the PBGC and agreed to by the plan administrator." *In re Syntex, supra,* 698 F.2d at 201 (citing 29 U.S.C. § 1348(a)(2)). In cases initiated under § 1341 where the termination date is agreed on by the PBGC and plan administrator, "[o]nce the PBGC determines that such a date is in accord with the interests it is required by the statute to protect, that date becomes the final termination date. Court intervention in this aspect of the termination is both unnecessary and *unauthorized.*" *Id.* at 204 (emphasis added). Believing that I am bound by this decision, I am without authority to revise the termination date.

Moreover, even if the court were to review the PBGC's action in this case pursuant to the due process clause of the Fifth Amendment to the Constitution, we cannot say that the choice of November 1, 1977 as the termination date was arbitrary and capricious. This was the date of cessation of steelmaking activities at the Allan Wood plant which for all practical purposes terminated plaintiff's employment. *See In re Syntex, supra.* The views of the PBGC are entitled to great deference in the application of ERISA. *See United Steelworkers v. Harris & Sons Steel Co.,* 706 F.2d 1289, 1296 n. 17. (3d Cir.1983).

The court is indeed sympathetic to the plaintiff's plight in these difficult economic times. But plaintiff must realize that had Congress not enacted ERISA his pension would most probably have been lost by virtue of Allan Wood's bankruptcy. Consequently, plaintiff should take solace in the fact that at the age of sixty his years of labor will not be lost, but will provide him a partial pension.